TERRY GODDARD
ARIZONA ATTORNEY GENERAL
Firm Bar No. 14000

William A. Richards, Arizona Bar No.  013381
Assistant Attorney General
1275 West Washington Street
Phoenix, AZ  85007-2926
Telephone: (602) 542-8355
Fax: (602) 364-2214
Bill.Richards@azag.gov
*Pro Hac Vice*

Randy S. Hunter, Utah Bar No. 09084
Assistant Utah Attorney General
160 East 300 South, 5th Floor
P.O. Box  140857
Salt Lake City, UT  84114-0857
Telephone: (801) 366-0238
Fax: (801) 366-0352
RandyHunter@utah.gov

*Attorneys for Defendant Terry Goddard*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| THE FUNDAMENTALIST CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, an Association of Individuals,<br><br>            Plaintiff,<br><br>      vs.<br><br>BRUCE R. WISAN, Special Fiduciary of the United Effort Plan Trust; MARK SHURTLEFF, Attorney General for the State of Utah; TERRY GODDARD, Attorney General for the State of Arizona; DENISE POSSE LINDBERG, Judge of the Third Judicial District Court of Salt Lake County, State of Utah,<br><br>            Defendants. | **MOTION TO DISMISS TERRY GODDARD, ATTORNEY GENERAL OF THE STATE OF ARIZONA**<br><br> No. 2:08-CV-00772-DB<br><br><br> (Assigned to the<br>  Honorable Dee Benson) |

352980                              1

Any claim against Defendant Terry Goddard, Attorney General of the State of Arizona (the "Arizona AG"), must be dismissed under Rule 12(b), Fed.R.Civ.P. because: 1) the Plaintiff's First Amended Complaint and Request for Declaratory and Injunctive Relief ("Complaint") states no allegations of any wrongdoing by the Arizona AG, and therefore fails to state a claim upon which relief can be granted; 2) the Court lacks jurisdiction because the named Plaintiff lacks standing as an unincorporated association to bring the claims alleged; 3) the Complaint violates Rule 10, Fed.R.Civ.P. by failing to identify a real plaintiff or plaintiffs; and 4) claims against the Arizona AG are barred by the *Younger* abstention doctrine and the *Rooker-Feldman* doctrine.

## I.     The Complaint States No Wrongdoing by the Arizona AG.

### A.     Plaintiff Is Required to Allege Facts Showing Actionable Conduct by the Arizona AG.

The claims are brought under 42 U.S.C. § 1983, for declaratory and injunctive relief under the First Amendment of the U.S. Constitution as applied to the states through the Fourteenth Amendment, for injunctive and declaratory relief under the Utah Constitution, under the private cause of action provision of the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc, *et seq.*, or under the federal Declaratory Judgment Act, 28 U.S.C. § 2201.   For all claims, the Plaintiff must state facts that establish acts or omissions of the Arizona AG causing injury to the Plaintiff and creating a basis for relief.   "A plaintiff in a civil rights action is required to set forth alleged misconduct and resultant harm in a way which will permit an informed ruling whether the wrong complained of is of federal cognizance." *Taylor v. Nichols,* 409 F.Supp. 927, 934 (D.Kan. 1976), aff'd 558 F.2d 561 (10th Cir. 1977) (citing *Rodes v. Municipal Authority*, 409 F.2d 16 (3rd Cir. 1969); *see also* Rule 8(a), Fed.R.Civ.P.  Mere conclusory allegations of constitutional violations will not prevent a motion to dismiss. *See Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991)(conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be

352980                                        2

based.); *Riddle v. Mondragon,* 83 F.3d 1197, 1202 (10th Cir.1996); *Reisner v. Stoller,* 51 F.Supp.2d 430, 440 (S.D.N.Y. 1999)(quoting 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.34 [1][b] (3d ed.1997)); *see also Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1088 (2d Cir.1995); *Robinson v. McCorkle*, 462 F.2d 111 (3rd Cir. 1972), *cert. den.* 409 U.S. 1042 (1972); *Ketchum v. Cruz,* 775 F.Supp. 1399, 1403 (D.Colo.1991), *aff'd,* 961 F.2d 916 (10th Cir.1992); *Taylor,* 409 F.Supp. at 934 ("Mere conclusory allegations that unspecified constitutional rights have been infringed . . . will not suffice to state a claim upon which relief can be granted under the Civil Rights Act."). Instead, the Plaintiff must allege "personal participation" by each of the named defendants. *See Olson v. Stotts,* 9 F.3d 1475, 1477 (10th Cir. 1993); *Coleman v. Turpen,* 697 F.2d 1341, 1346 n. 7 (10th Cir.1982)(liability under § 1983 requires personal involvement in deprivation); *Bennett v. Passic,* 545 F.2d 1260, 1262-63 (10th Cir.1976). Their allegations must show that each defendant caused a deprivation of Plaintiff's federal rights. *See Kentucky v. Graham,* 473 U.S. 159, 166 (1985). The facts alleged must also establish an "affirmative link" between the alleged constitutional violations and the Arizona AG's participation in, control or direction of the conduct causing a constitutional injury. *See Butler v. City of Norman,* 992 F.2d 1053, 1055 (10th Cir.1993).

The Plaintiff has made nothing more than conclusory allegations that identify no wrongful conduct by the Arizona AG, nor injuries caused by the Arizona AG.

**B.** **The Complaint Makes No Allegations of Wrongful Acts by the Arizona AG.**

The Complaint only mentions the Arizona AG three times. The first merely identifies the Arizona AG as a party against whom relief is sought. Complaint, at 2, ln 2. The second is the statement at paragraph 26 that "[t]he Attorney General of the State of Arizona moved to intervene and was treated by all concerned as a party to the action [Case No. 053900848, Third Judicial District Court of Salt Lake County, State of Utah]."

352980                                            3

The third reference is a quote at paragraph 28 from a decision of the Third Judicial District Court that "the 'Utah and Arizona AG's standing is predicated on the assumption that the Trust is a charitable trust. If it is, the AG's are the community's representatives responsible for ensuring that the *charitable purposes of the Trust are protected*,'" followed by the explanation that the state court "concluded . . . that the respective Attorneys General had standing to appear on behalf of the religious Restated Trust." Complaint, at ¶ 28 (emphasis in original). Thus, the Complaint makes no allegation that anything done by the Arizona AG was wrongful, caused the violation of any particular constitutional right, or caused any other particular injuries.

### C.    None of Claims for Relief Involve Actions of the Arizona AG.

#### 1.    The First and Second Claims for Relief.

None of the individual claims for relief rest on any conduct of the Arizona AG, either. The First Claim for Relief seeks a declaration that "the unique remedy *fashioned by the District Court in the exercise of its discretion* to address a breach of fiduciary duty is inconsistent with the constitution because it deprives Association members of the right and ability to seek a stewardship within the meaning of the United Order and the Law of Consecration, and because the remedy had and continues to have a significant impact on the exercise of religion." Complaint, at ¶ 55 (emphasis added). It also seeks a declaration "that the unique remedy *fashioned by the District Court in the exercise of its discretion* is further inconsistent with the First Amendment because it violates the Establishment Clause." Complaint, at ¶ 56 (emphasis added). The Second Claim for Relief seeks declarations identical to those sought in the First Claim, except that they involve Utah state constitutional religious rights rather than federal religious rights. *Id.* at ¶¶ 59-60. Thus, the First and Second claims seek only a declaration that the state court has used its discretion unconstitutionally, and seeks no relief against the Arizona AG.

2.      **The Third Claim for Relief.**

The Third Claim for Relief is alleged only against Defendant Bruce Wisan, the Special Fiduciary appointed for the United Effort Plan Trust ("UEP Trust"). Complaint, at ¶¶ 61-80 (entitled "(Violation of RLUIPA, 42 U.S.C. § 2000cc – Defendant Wisan)"). It seeks a declaration only that the unique remedy fashioned by the state court in its discretion violates the Religious Land Use and Incarcerated Persons Act of 2000, 42 U.S.C. § 2000cc ("RLUIPA"). Nor could Plaintiff state a cognizable claim against the Arizona AG under the RLUIPA. That act applies, under the relevant circumstances, only to prohibit states from "impos[ing] or implement[ing] a *land use regulation* in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution . . .." 42 U.S.C. § 2000cc(a). The act defines a "land use regulation" as "a zoning or landmarking law ... that limits or restricts a claimant's use or development of land (including a structure affixed to land), if the claimant has an ownership, leasehold, easement, servitude, or other property interest in the regulated land or a contract or option to acquire such an interest." 42 U.S.C. § 2000cc-5(5). Thus, "a government agency implements a 'land use regulation' only when it acts pursuant to a 'zoning or landmarking law' that limits the manner in which a claimant may develop or use property in which the claimant has an interest." *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 434 (6th Cir. 2002). The allegation that the Arizona AG intervened in a trust proceeding does not allege any imposition of a "land use regulation" as required by the RLUIPA.

3.      **The Fourth and Fifth Claims for Relief.**

The Fourth Claim for Relief essentially seeks a declaration that state court erred in relying on Utah's bigamy statute as a basis for its trust reformation decision because that statute is unconstitutional under both the federal and state constitutions. *Id.* at ¶¶ 81-90. The Fifth Claim for Relief merely seeks a declaration that various Utah trust code

provisions are unconstitutional because they grant power that is too broad to the state courts. *Id.* at ¶¶ 91-93. It makes no claim and seeks no relief against the Arizona AG.

### 4. The Sixth Claim for Relief.

Finally, the Sixth Claim for Relief (Complaint, at ¶¶ 94-100) is actually not an independent cause of action, but seeks injunctive relief as a remedy for the other violations of rights alleged in the Complaint. *See Cox Communications PCS, L.P. v. City of San Marcos,* 204 F.Supp.2d 1272, 1283 (S.D.Cal. 2002)("Injunctive relief, like damages, is a *remedy requested by the parties, not a separate cause of action. See* BLACK'S LAW DICTIONARY 201 (1979)(defining cause of action as "[a] situation or state of facts which would entitle party to sustain action and give him right to seek a judicial remedy in his behalf."))(emphasis in original); *see also Gates v. Sprint Spectrum, L.P.,* 523 F.Supp.2d 1287, 1291 (D.Kan. 2007)("Injunctive relief is a type of relief he seeks for the alleged trespass, not a cause of action."); *In re Wal-Mart Wage and Hour Employment Practices,* 490 F.Supp.2d 1091, 1130 (D. Nev. 2007) ("Although denominated as a separate claim, count nine is not a separate cause of action but a request for injunctive relief."); *McDowell v. Watson,* 59 Cal.App.4th 1155, 1159, 69 Cal.Rptr.2d 692, 695 (Cal.App. 1997)("'Injunctive relief is a remedy and not, in itself, a cause of action....'"(quoting *Shell Oil Co. v. Richter,* 52 Cal.App.2d 164, 168, 125 P.2d 930 (1942))   As a request for a remedy that is merely derivative of the other claims against other parties, the injunction claim does not plead a claim against the Arizona AG.

Instead, the injunctive relief claim contains allegations that "[i]n their "day-to-day administration of the Reformed Trust, the Defendants are destroying the future ability of the Plaintiff to rely upon the property of the Trust to support their religious beliefs and exercise," followed by allegations about "dissipating assets of the Trust," "using their control of the Trust as a weapon in their self-described 'sociological and psychological war with the beneficiaries of the Trust," "using their control of the trust to attempt to destroy the Fundamentalist Church," and "crippling the continuation of the religious

1    movement by alienating the property which supports the Bishop's Storehouse."

2    Complaint, ¶ 96.  These obviously do not represent allegations against the Arizona AG as

3    the Complaint earlier admits that the state court had suspended the United Effort Plan

4    Trust's ("UEP Trust") trustees and appointed a Special Fiduciary (who is Defendant

5    Bruce Wisan).   Complaint, ¶ 27.   The Complaint further alleges that "[n]ow, the

6    Reformed Trust is being managed *by the State of Utah . . .*," that "*Utah, through its*

7    *Attorney General and the Third District Court*, is interfering" with FLDS members'

8    exercise of religion, that the trust "is being managed under the auspices of *the State of*

9    *Utah, the Third District Court and the Attorney General for the State of Utah . . .*," and

10   that "*the State of Utah* has violated and continues to violate state and federal

11   Establishment clauses . . .." Complaint, ¶¶ 46, 47, 49 (emphasis added).   Thus, no

12   allegations are made against the Arizona AG.   Moreover, the public record of the

13   proceedings in the state court litigation confirm that the state court has vested trust

14   management authority in the Special Fiduciary, under Court supervision and oversight.

15   *See* Exhibit "A" hereto (state court orders filed June 16, June 22, 2005; Exhibit "1" to

16   Defendant Arizona AG's Response and Objection to Motion for Temporary Restraining

17   Order and/or Preliminary Injunction filed in this action (hereafter "Arizona AG's TRO

18   Response" at 24-28)].[1]   The state court has vested no "day-to-day" trust administration

19

20   _____

21   [1]    "[F]acts subject to judicial notice may be considered in a Rule 12(b)(6) motion
     without converting the motion to dismiss into a motion for summary judgment." *Tal v.*
22   *Hogan,* 453 F.3d 1244, 1265 n. 24 (10th Cir.2006), *cert. den.* 127 S.Ct. 1334 (2007)
     (citing *Grynberg v. Koch Gateway Pipeline Co.,* 390 F.3d 1276, 1278 n. 1 (10th
23   Cir.2004)). Court files, including state court files, are matters of public record of which
     this Court may take judicial notice without converting this motion to dismiss. *See, e.g.,*
24   *Pace v. Swerdlow,* Civ. No. 06-4157, --- F.3d ----, 2008 WL 570805, at * 5 (10th Cir.
     Mar.4, 2008) (on motion to dismiss for failure to state a claim district court could take
25   judicial notice of materials in state court's file without converting motion); *Binford v.*
     *United States,* 436 F.3d 1252, 1256 n. 7 (10th Cir.2006) (in resolving motion to dismiss,
26   district court may take judicial notice of matters in public record.); *St. Louis Baptist*
     *Temple, Inc. v. Fed. Deposit Ins. Corp.,* 605 F.2d 1169, 1172 (10th Cir.1979) ("[A] court

27

28   352980                                    7

or management powers in the Arizona AG, the Arizona AG has no "control" over the trust, nor has the Arizona AG ever sold, transferred, or "dissipated" assets of the trust. Thus, nothing in the Complaint alleges any actionable wrongdoing by the Arizona AG.

Thus, the only factual allegation made against the Arizona AG is that he sought leave to intervene in the state court judicial proceedings and that the state court recognized his standing to do so. This was done by proper written motion filed with the state court. *See* Exhibit "B" hereto (copy of Motion for Leave to Intervene as Interested Party).[2] Merely alleging that the Arizona AG intervened in a state court proceeding does not "set forth alleged misconduct and resultant harm in a way which will permit an informed ruling whether the wrong complained of is of federal cognizance," as required. *Taylor,* 409 F.Supp. at 934. Nor does it allege the type of identifiable personal participation in unconstitutional actions, nor the "affirmative link" between such participation by the Arizona AG and injuries to the constitutional rights of the Plaintiff. Thus, the Court should dismiss any claims against the Arizona AG in this action for their failure to state a claim upon which relief can be granted. Rule 12(b)(6), Fed.R.Civ.P.

## II.     The Plaintiff Improperly Fails to Identify a Single Plaintiff With Standing.

Rule 10(a), Fed.R.Civ.P. requires that "[i]n the complaint the title of the action shall include the names of all the parties . . .." The Plaintiff has not named a single member of the Fundamentalist Church of Jesus Christ of Latter-Day Saints ("FLDS") as a plaintiff, but instead identifies as a single plaintiff "The Fundamentalist Church of Jesus Christ of Latter-Day Saints, *an Association of Individuals.*" Complaint, at 1 (caption and

---

may ... take judicial notice, whether requested or not ... of its own records and files, and facts which are part of its public records."); *see also Meredith v. Oregon,* 321 F.3d 807, 817 (9th Cir.2003), *as amended,* 326 F.3d 1030 (2003)(taking judicial notice of filing in state court of appeals).

[2]   Again, the attached motion is part of the state court record of which this Court may take notice. *See* footnote 2, *supra.*

first paragraph).   The Complaint states at paragraph 3 that "Plaintiff is an Association of members of the FLDS Church . . .."[3]   The Complaint does not assert any corporate or other legal entity status for the Plaintiff.   Thus, the Plaintiff is merely an unincorporated "association" of unnamed individuals.

To the extent the Complaint intends to assert claims on behalf of any individuals, it violates Rule 10(a), Fed.R.Civ.P., which requires the Complaint to identify all plaintiffs by name.   The Federal Rules of Civil Procedure provides no option for naming of fictitious or anonymous parties.   *Watson v. Unipress, Inc.,* 733 F.2d 1386, 1388 (10th Cir.1984) ("no federal statute or rule specifically countenances the naming of fictitious parties in a lawsuit"); *Coe v. U.S. Dist. Court for Dist. of Colorado,* 676 F.2d 411, 415 (10th Cir.1982) ("There is no provision in the Federal Rules of Civil Procedure for suit against persons under fictitious names, and there are likewise no provisions for anonymous plaintiffs.")(citation omitted); *see also Whalen v. U.S.,* 80 Fed.Cl. 685, 692 (Fed.Cl. 2008).   "[I]dentifying a plaintiff only by a pseudonym is an unusual procedure, to be allowed only where there is an important privacy interest to be recognized." *Lindsey v. Dayton-Hudson Corp.,* 592 F.2d 1118 (10th Cir.1979), *cert. den.* 444 U.S. 856 (1979).[4]   None of the unusual circumstances warranting proceeding anonymously are plead here, and Plaintiff has requested no anonymous treatment of any individuals.   Therefore, Rule 10(a) would require individuals asserting claims to be named.

---

[3]   The caption to the original Plaintiff's Complaint and Request for Declaratory and Injunctive Relief titled the same association name as "Plaintiffs", but the amended complaint caption identifies the association as a single "Plaintiff."

[4]   *See also Whalen,* 80 Fed.Cl. at 692 ("The use of pseudonyms in a complaint is contrary to this requirement. Consequently, courts allow parties to proceed anonymously only where unusual circumstances justify concealing a party's identity." *Wolfchild v. United States,* 62 Fed.Cl. 521, 552 (2004) (citing *Does I Thru XXIII v. Advanced Textile Corp.,* 214 F.3d 1058, 1067 (9th Cir.2000)(collecting cases)).

To the extent the unincorporated association seeks to make claims on behalf of individual members without naming them, it must establish standing to do so. "In every federal case, the party bringing the suit must establish standing to prosecute the action." *Elk Grove Unified Sch. Dist. v. Newdow,* 542 U.S. 1, 11 (2004). Yet, the association can not establish standing under the claims plead here.

### A.   The Section 1983 Claim (First Claim for Relief).

"Every civil action in the federal courts must, of course, be prosecuted in the name of the real party in interest. And the "real party in interest" is the one who, under applicable substantive law, has the legal right to bring the suit." *Citizens Concerned for Separation of Church and State v. City and County of Denver,* 628 F.2d 1289, 1300 (10th Cir. 1980), *cert. den.* 452 U.S. 963 (1981)(citing *Hoeppner Construction Company v. United States*, 287 F.2d 108 (10th Cir. 1960). An unincorporated association is not a "person" under 42 U.S.C. § 1983 and has no standing to bring any claim alleging violation of constitutional rights thereunder, including any claims for violations of First Amendment rights. *Lippoldt v. Cole,* 468 F.3d 1204, 1212-16 (10th Cir. 2006). Thus, the Plaintiff here has no standing to bring any claims under 42 U.S.C. § 1983, and the First Claim for Relief would be barred.

### B.   Direct Claims Under the State and Federal Constitutions and RLUIPA.

As for claims made directly under the federal and state constitutions, and under the RLUIPA, an unincorporated association could, at best, claim the right to "associational standing" recognized in *Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333 (1977).[5] The Plaintiff association does not allege that any constitutional rights belonging to it as a group have been violated. Instead, its claims for relief consistently assert that "Association members are entitled to this Court's declaration . . .." Complaint, at ¶¶ 55,

---

[5] The RLUIPA 42 U.S.C. § 2000cc-2 ("Judicial relief") provides "[s]tanding to assert a claim or defense under this section shall be governed by the general rules of standing under article III of the Constitution."

56, 59, 60, 80, 90, 93.  Thus, it asserts purely "associational standing."  To establish such standing, the association must establish three things: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief sought requires the participation of the individual members of the lawsuit." *Hunt,* 432 U.S. at 343.

The Plaintiff has not offered sufficient allegations to establish that its members would otherwise have standing to sue in their own right, or that the claims made and relief sought do not require the participation of individual members.  The basis for each of Plaintiff's claims is that its members' religious rights are being violated, for example, because the Utah state court has deprived its members "of the right and ability to seek a stewardship within the meaning of the United Order and the Law of Consecration . . .." Complaint, at ¶¶ 56, 60.  The Third Claim for Relief also alleges that "Utah's laws targeting plural marriage and the relationships and behaviors of its participants" "violates Association members' constitutional rights to intrinsic and instrumental association" in relationships that would violate Utah's laws.  Complaint, at ¶¶ 63-70.  That claim asserts that "[t]he private relationships in which Association members may be engaged are central to their deeply and sincerely held religious beliefs."  Complaint, at ¶ 69.  Yet, the Complaint identifies the Plaintiff association as "an Association of members of the FLDS Church who have consecrated their property, services, time, and talents to the FLDS Church via a charitable Trust known as the 'Amended and Restated Declaration of Trust of the United Effort Plan' . . .."  Complaint, at ¶ 3.  There is no allegation, however, that all persons who have "consecrated" property, services, time or talents to the UEP Trust have sought or intend to seek a "stewardship" in the UEP Trust property, there is no explanation of what such "stewardships" would be, nor is there any allegation that all such persons are practitioners of plural marriage or other relationships that would violate

1   Utah's bigamy laws.   Therefore, the allegations do not clearly establish the extent to

2   which association members could really make the claims in the Complaint individually.

3          This prevents the Plaintiff from meeting the third prong of the *Hunt* test.  Where,

4   as here, the plaintiff is a religious association claiming violations of the religious beliefs

5   of its members, the third element of the *Hunt* test is particularly difficult to meet.

6   Therefore, in *Society of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1288 (5th Cir.

7   1992), *cert. den.* 506 U.S. 866 (1992), the Fifth Circuit Court of Appeals held that an

8   association of atheists did not have standing to challenge on Establishment Clause

9   grounds a court's treatment of jurors who would refuse to swear or affirm to tell the truth

10  in future proceedings.  The court explained:

> It is often difficult for religious organizations to assert free exercise claims on
> behalf of their members because the religious beliefs and practices of the
> membership differ. *See Harris v. McRae,* 448 U.S. 297, 100 S.Ct. 2671, 2690, 65
> L.Ed.2d 784 (1980). Nothing in this record supports the notion that Society
> members share O'Hair's views regarding the religious nature of an affirmance.
> Speculation that this is so would be perverse indeed in a free exercise case.

15  *Id.*   Though the Complaint here alleges that the actions of the Utah state court in

16  reforming the UEP Trust precludes the association members from practicing their beliefs,

17  it thereby suggests complete uniformity of such beliefs, based on a complex recitation of

18  sources of doctrinal materials and interpretations of those materials.  *See* Complaint, at ¶¶

19  7-25.  The Court may not speculate that all members of the FLDS religion share identical

20  views about how the Trust operates in connection with their religion, about the scope or

21  nature of the Trust's religious purposes, or about what structure the FLDS members'

22  individual religious observances require the Trust to have.  Nor may the Court speculate

23  that all Plaintiff association members share identical beliefs or practices regarding plural

24  marriage.  In cases claiming impingement of religious beliefs, it is important for the

25  Court to decide the case in the context of individual's claims about their individual

religious beliefs – not based on the purported beliefs of a large group of adherents whose members refuse to be named individually.

Given that the Plaintiff association cannot establish its standing, and that the Plaintiff has failed to name any individual members, the Court must dismiss the claims against the Arizona AG for violation of Rule 10(a), Fed.R.Civ.P. and Plaintiff's lack of standing. As the Tenth Circuit Court of Appeals explained in *Citizens Concerned for Separation of Church and State,* 628 F.2d at 1300, proceeding here would require the Court to issue an impermissible advisory opinion:

> The record is barren of any identification of a single member (officer or otherwise) of Citizens. Thus, there is no showing that officers or members of Citizens have that necessary "personal stake" required for demonstration of injury in fact. In terms of the "legal wrongs" or "zones of interests" tests relative to standing to sue, there must be some articulable "cause and effect" relation to an identifiable "injury" attributable to a party litigant. A private litigant must, in order to have "standing" to sue, demonstrate a personal stake in the outcome and that he is the proper party to request adjudication of the particular issue. *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Article III courts cannot issue advisory opinions which cannot affect the rights of the parties in the case before them. *North Carolina v. Rice*, 404 U.S. 244, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971); *Oil Workers Union v. Missouri*, 361 U.S. 363, 80 S.Ct. 391, 4 L.Ed.2d 373 (1960).

Thus, lack of standing warrants dismissal of the Arizona AG.

## III. Federal Abstention Law Requires Dismissal of All Claims Against the Arizona AG.

### A. There Are Multiple Sources of Federal Abstention Doctrines.

#### 1. The Anti-Injunction Act.

Congress has declared through the Anti-Injunction Act, 28 U.S.C. § 2283 that:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

This complements the four abstention doctrines recognized by the U.S. Supreme Court, three of which encourage the Court to abstain or defer ruling in this action, and one of which, *Younger* abstention, requires the Court to dismiss the federal claims here.

### B. *Younger* Abstention Requires Dismissal.

Under "*Younger* abstention," a federal court *must* abstain from deciding claims filed to enjoin state enforcement proceedings absent a showing of bad faith, harassment, or other unusual circumstances calling for equitable relief. *Younger v. Harris,* 401 U.S. 37 (1971). The U.S. Supreme Court explained *Younger* abstention in *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 431 (1982):

> *Younger v. Harris,* [401 U.S. 37 (1971)], and its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances. The policies underlying *Younger* abstention have been frequently reiterated by this Court. The notion of "comity" includes "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." Minimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights.

(citations omitted).

Under *Younger,* the Court must therefore abstain and dismiss if the case meets three tests: 1) there must exist an ongoing state judicial proceeding; 2) that implicates important state interests on matters traditionally resolved by state law; and 3) that offers an adequate opportunity for the plaintiffs to raise a constitutional challenge. *Id.* at 431; *Chapman v. Okla.,* 472 F.3d 747, 749 (10th Cir. 2006); *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n,* 319 F.3d 1211, 1215 (10th Cir. 2003). "Once these three conditions are met, *Younger* abstention is non-discretionary and, absent extraordinary circumstances, a district court is required to abstain." *Crown Point I, LLC,* 319 F.3d at 1215 (citation omitted). The only "extraordinary circumstances" that will

352980                                                    14

avoid abstention exist where the state court proceedings are "flagrantly and patently" unconstitutional, or if the state proceedings involve bad faith or harassment. *See Middlesex County Ethics Comm.,* 457 U.S. at 429, 437. All three prerequisites exist here, and no exceptions are present.

### 1.   There Already Exists a Parallel State Court Proceeding.

As noted by the Complaint at ¶ 26, in May, 2005, the Office of the Attorney General of the State of Utah initiated the action in the Third Judicial District Court of the State of Utah, Case No. 053900848 (the "UEP Trust Case") seeking suspension of the trustees of the UEP Trust. At the time the Utah Third Judicial District Court ruled on the original petition in the UEP Trust Case, the UEP Trust had been named as a defendant in tort lawsuits and a fraudulent transfer action pending in Utah state courts (Third Judicial District Court of the State of Utah, Case Nos. 040915857 and 040918237; Fifth Judicial District Court of the State of Utah, Case No. 050500723), and the trustees of the UEP Trust had refused to defend the trust against the tort claims, exposing it to substantial liability and dissipation of assets.

The petition filed by the Utah Attorney General invoked the trust laws of the State of Utah. The Utah trust laws include the statutes at Utah Code Ann. §§ 75-1-301, *et seq.* (Utah Uniform Probate Code, 75-7-101, *et seq.* (Utah Uniform Trust Code). Under those statutes, Utah has established a comprehensive state system for the administration of trusts, and has assigned its state courts jurisdiction to determine trust disputes, offer instructions on trust administration, and administer trusts in situations like that presented by the UEP Trust. The UEP Trust Case was assigned to Defendant Honorable Denise Posse Lindberg.

The Utah Third Judicial District Court accepted jurisdiction, suspended and later removed the prior trustees, appointed a Special Fiduciary to administer the trust under the court's supervision and an advisory board to help advise the Special Fiduciary, and has continually taken actions in administration of the trust. The Utah court has

previously approved sales of trust property, and by Memorandum Decision dated December 13, 2005, the Utah court announced its decision to reform the UEP Trust and the parameters for such reformation. [*See* Exhibit "1" to Arizona AG's TRO Response]. Effective October 25, 2006, the court issued a Reformed Declaration of Trust of the United Effort Plan Trust, reforming the trust to preserve its charitable purposes while making it non-sectarian. [*See* Exhibit "2" to Arizona AG's TRO Response]. As acknowledged by the Complaint, the state court action is still active.

On July 15, 2008, Hildale City, Colorado City "and the respective citizens of those communities" filed in the UEP Trust Case a Motion for Temporary Restraining Order Removing Special Fiduciary or Limiting Special Fiduciary's Powers. [Exhibit "3" to Arizona AG's TRO Response (motion); Exhibit "C" hereto (supporting memorandum)]. They claimed that the Special Fiduciary's actions, including requiring occupants of homes on UEP Trust land to sign occupancy agreements and pay $100-per-month assessments, were "causing irreparable injury" to citizens of the twin cities by displacing families from their homes, and by impeding the cities' abilities to discharge their duties. [Exhibit "3" to Arizona AG's TRO Response at ¶¶ 43-44]. They claimed that absent removal or restriction, the Special Fiduciary would systematically destroy their communities. [*Id.* at ¶ 45]. The state court denied the motion. The "respective citizens" of Hildale City and Colorado City would undoubtedly include members of the Plaintiff association.

Most recently, three individuals, Willie Jessop, Dan Johnson and Merlin Jessop filed in the UEP Trust Case on August 18, 2008, a motion seeking to stay all sales of UEP Trust property. The motion named these individuals and sought an emergency order "on their own behalf and ***on behalf of other members in good standing of the Fundamentalist Church of Jesus Christ of Latter-Day Saints*** . . .." [Exhibit "5" to Arizona AG's TRO Response (Emergency Motion for Stay of Sales of Trust Property (filed August 18, 2008)), at 1 (emphasis added)]. The FLDS members recounted their

claims about the religious history and nature of the UEP Trust, and specifically objected to the proposed sale of the Berry Knoll Farm property claiming it "would deal a devastating and irreparable blow to the FLDS community by eliminating a core pillar of the religious communal lifestyle." [Exhibit "6" to Arizona AG's TRO Response at 13]. The FLDS members claimed that in asking the Court to force the Special Fiduciary to seek public court approval of any sales of UEP Trust property, they were seeking "an opportunity to be informed and to present evidence and arguments to the Court in an appropriate factual context concerning how such a sale would injure their community and their religious exercise rights." [*Id.* at 16].  A motion on behalf of all members in good standing of the FLDS Church would, by definition, include all members of the Plaintiff association.

The Special Fiduciary, Office of the Utah Attorney General and Office of the Arizona Attorney General all objected to this recent motion.  Among other things, the Office of the Arizona Attorney General explained that:  "Underlying the Movants' motion is a suggestion that the reformation of the Trust and the Court's exercise of jurisdiction over the Trust somehow violate rights of the Movants or other members of their community.  It would be too late to bring such challenges, however." [Exhibit "7" to Arizona AG's TRO Response (Response to Emergency Motion to Stay of Sales of Trust Property) at 3].   The Arizona AG then detailed the diligent and thorough efforts of the Special Fiduciary since mid-2005 to provide notices concerning the appointment of the Special Fiduciary, the reformation of the Trust, and other trust administration issues. The notices included discussions with the mayors of the two communities, public meetings, attempts to communicate with FLDS church leaders, and written notices provided to all persons residing on UEP Trust property.  [*See id.* at 4-5].  The Arizona AG explained how such notice and the failure of the FLDS members to involve themselves in the judicial administration of the UEP Trust precluded their late claims under doctrines of laches and estoppel.  [*Id.* at 3-9].

1   The Third Judicial District Court denied the FLDS members' motion, finding that

2   the movants' lacked standing to make such challenges.   The FLDS members filed on

3   November 4, 2008, in the UEP Trust Case an Ex Parte Motion to Stay All Proceedings

4   Pending Appellate Review of Certain Interlocutory Orders asking the Third Judicial

5   District Court to issue a stay of any sale of the Berry Knoll Farm property and any other

6   trust property pending state appellate review of various orders including the order

7   denying a stay on the sale of trust property.   [Exhibit "9" to Arizona AG's TRO

8   Response at 1-2].   The memorandum in support of that pending motion urged that sale

9   of the Berry Knoll Farm will constitute irreparable harm "because the particular real

10  property at issue here – Berry Knoll Farm – is sacred to members of the FLDS Church."

11  [Exhibit "10" to Arizona AG's TRO Response at 13].   Three members of the FLDS

12  community, Messrs. Willie Jessop, Dan Johnson and Merlin Jessop joined the Trust's

13  former attorneys in filing a Rule 8A Petition for Emergency Relief with the Utah

14  Supreme Court which sought an order staying various matters in the UEP Trust Case,

15  including "a November 14, 2008 hearing to approve the immediate sale of more than

16  430 acres of sacred land" (footnote omitted), along with an order of Judge Lindberg

17  requiring the Trust's former counsel to disclose their files concerning representation of

18  the Trust as part of discovery requested by the Special Fiduciary, Mr. Wisan. [*See*

19  Exhibit "D" hereto].   The moving parties identified parties to this action as "other

20  persons or associations whose interests might be substantially affected" by their state

21  court petition.  [*Id.* at 2].  The moving parties promised to file "separate Rule 19 review

22  petitions" challenging rulings in the UEP Trust case, including a ruling that the moving

23  parties "lack standing to challenge the court-appointed Special Fiduciary's proposed

24  sales of UEP[]T[rust] property, including the proposed sale of sacred land of the FLDS

25  Church to a rival polygamous religious group."  [*Id.*]   The Utah Supreme Court appeal

26  mirrors arguments made in the Complaint here about the religious history and purposes

27  of the UEP Trust, and complaining of the state court's reformation of the UEP Trust, and

28

352980                                            18

1   asserting that the moving parties had standing to object to the court's administration of

2   the Trust.

3       The Utah Supreme Court declined to stay the November 18, 2008 hearing, but

4   provisionally stayed rulings in the UEP Trust case on the disqualification of the Trust's

5   former counsel from representing moving parties against the Trust, and requiring

6   disclosure of materials the Trust's former counsel claimed was privileged.  The Utah

7   Supreme Court indicated it intended to conduct a hearing on the challenges to the trial

8   court rulings in the UEP Trust case, and parties to the Supreme Court action have filed a

9   stipulated motion to stay further briefing and continue oral argument at this time.  [*See*

10  Exhibits "E" and "F" hereto.]

11      Thus, pending in state court are proceedings, ostensibly on behalf of all members

12  in good standing of the FLDS Church, claiming essentially that allowing sale of the Berry

13  Knoll Farm will constitute a violation of church members' free exercise rights.  The

14  underlying arguments there have laid out the same claim to religious sanctity of the UEP

15  Trust and impingement of constitutional religious rights that form the basis for the claims

16  made here.  Thus, members of the Plaintiff association are already seeking in state court

17  to enforce the constitutional rights concerning religious exercise that they seek to

18  vindicate here.   Even if the persons seeking relief in state court and those seeking relief

19  here are not identical, there is sufficient overlap to justify abstention.  *See D.L. v. Unified*

20  *School Dist. No. 497,* 392 F.3d 1223, 1231 (10th Cir. 2004), *cert. den.* 544 U.S. 1050

21  (2005)(holding that abstention was appropriate even when parties in state and federal

22  proceedings are not identical); *see also Doran v. Salem Inn, Inc.*, 422 U.S. 922, 928

23  (1975) ("'there plainly may be some circumstances in which legally distinct parties are so

24  closely related that they should all be subject to the Younger considerations which govern

25  any one of them.'"); *Hicks v. Miranda*, 422 U.S. 332 (1975) (upholding abstention in

26  case involving intertwined interests of theater owner and employees).

27

28

1

2.      **The Issues In the State Case Involve Important State Matters.**

2

The enforcement of a charitable trust is a matter of state law, delegated to the state

3

courts of Utah under both common law and the Utah trust statutes.   Trust matters are

4

routinely handled by the state, rather than the federal courts, and even where federal

5

courts get involved, they will enforce state trust law.   Enforcement of charitable trusts is

6

thereby undeniably a matter of great importance to the state courts.   The second element

7

of the *Younger* test is met.

8

3.   **The Plaintiffs Have an Adequate Opportunity to Raise Their**
    **Constitutional Claims in State Court.**

9

10

There is no bar to the Plaintiff's members initially making their arguments in state

11

court that the state court's administration and reformation of the UEP Trust violate their

12

religious rights under the federal constitution.   Some of the members themselves

13

recognized this by making arguments similar to those made here in the UEP Trust Case,

14

and by continuing to pursue those arguments in their pending state court filings.   While

15

various parties have contested the standing of such persons to contest things in the UEP

16

Trust Case, the FLDS members are nonetheless free to file such matters, and have the

17

state courts decide both their standing to make such arguments and, if standing is

18

confirmed, the merits of the arguments themselves.   Having already raised such

19

allegations in the state courts, the Plaintiff's members should be required to seek

20

appellate relief in the state courts if available.   A party is required to "exhaust his state

21

appellate remedies before seeking a federal injunction unless he can bring himself into

22

one of the exceptions in Younger."[6]  *Morrow v. Winslow*, 94 F.3d 1386, 1392 (10th Cir.

23

24

25

[6] The exceptions to Younger include:

26

(1) if the state proceeding is motivated by a desire to harass or is conducted in bad
faith;

27

28

352980                                      20

1996), *cert. den.* 520 U.S. 1143 (1997)(citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 609, 611 (1975)).   The third element of *Younger* is met.

Given that all the *Younger* tests are met, the Court must dismiss the claims against the Arizona AG.

### C.   Other Abstention Doctrines Also Apply.[7]

The Court would also be justified in abstaining here under the "*Pullman* abstention*" policy, whereby federal courts defer deciding federal constitutional claims that may be disposed of by state court rulings on state law.   *See Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496 (1941); *Burdman v. Nyquist*, 332 F. Supp. 460 (W.D.N.Y. 1971)(abstaining from a request by Catholic colleges and students of Catholic and non-Catholic faiths for a declaration that a state constitutional provision prohibiting the state from using its property in aid of any school controlled by a religious denomination violated their federal First Amendment rights where the issue of whether a college was under the control of any religious denomination was, as yet, an unresolved question of state law whose determination could avoid or modify relevant federal constitutional questions.);  *Entman v. City of Memphis,* 341 F.Supp.2d 997 (W.D. Tenn. 2004) (court abstained from deciding claim challenging use of city funds to renovate churches where no federal issue would need to be resolved if state courts found violation of state constitution.); *Maier v. Good,* 325 F.Supp. 1268 (N.D.N.Y. 1971) (court

---

(2) if the challenged statute is flagrantly violative of express constitutional provisions; or

(3) if extraordinary circumstances exist.

94 F.3d at 1392 (citing *Phelps v. Hamilton*, 59 F.3d 1058, 1063-64 (10th Cir. 1995)).  No such circumstances exist here.

[7]   While the other abstention doctrines may caution the Court to merely stay, as opposed to dismiss, the action, their applicability bolsters the appropriateness of dismissal required by the *Younger* doctrine and they are therefore worth considering here.

abstained from deciding issues raised by alleged non-formal member of a religious organization that a new state statute granting exemption from school immunizations only to formal members of religious organizations violated the federal Establishment Clause; application of the statute had not been ruled on by state courts and there were possibly controlling issues of state law that should be decided by state courts).  Here, the Utah Supreme Court could decide that Plaintiff's members, or at least some of them, have standing to contest the UEP Trust proceedings, and the state trial court might be required to further address their claims of religious infringement.  All of this could change the issues before this Court, or could even make some challenges raised here unnecessary.

Relatedly, federal courts may abstain from deciding a claim whenever parallel state court proceedings are pending.  *See Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800 (1976) ("*Colorado River").*  "'Suits are parallel if substantially the same parties litigate substantially the same issues in different forums.'"  *Allen v. Board of Educ., Unified Sch. Dist. 436*, 68 F.3d 401, 403 (10th Cir. 1995) (citations omitted).

Also, under *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943), the courts may abstain if the federal claim "presents 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar,' or if its adjudication in a federal forum 'would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'"  *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 726-27 (1996) (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans ("NOPSI"),* 491 U.S. 350, 361 (1989) (quoting *Colorado River,* 424 U.S. at 814)).

Under *Burford* abstention, when the federal action requires the court to determine issues that are directly relevant to the state proceeding or requires the Court to determine issues directly relevant to state regulatory policy, abstention may be appropriate.  Similarly, abstention is justified where existing state procedures indicate a desire to

create special state forums to regulate and adjudicate the issues plaintiffs raise, and where difficult or unusual state laws are at issue. *See Grimes v. Crown Life Ins. Co.,* 857 F.2d 699, 704-05 (10th Cir. 1988); *In Re Universe Life Ins. Co.*, 35 F.Supp.2d 1297, 1301 (D.Kan. 1999); *accord Hartford Casualty Ins. Co. v. Borg-Warner Corp.,* 913 F.2d 419, 425-26 (7th Cir. 1990).  As an example, abstention is appropriate where a state has adopted "a complex and comprehensive scheme of insurance regulation" providing for liquidation of an insolvent insurer, the state had established a special forum to handle the liquidation proceedings, the case implicated important state law issues, and exercise of federal jurisdiction would unduly disrupt the ability of state officers and courts to devise and efficiently operate a complex system of administrative and judicial interrelationships. *Grimes,* 857 F.2d at 705.

Here, the claims involve complex issues of trust law directed to the state courts. State law and procedures indicate a desire to provide a forum for adjudication of such issues, and unique questions of state law are proposed.  Though it is impossible to confirm the purported identities of all members of the Plaintiff association, logic dictates that some of them are involved in the state court proceedings.  Again, abstention in the face of such factors is appropriate.

## IV.   The *Rooker-Feldman* Doctrine Bars the Court from Jurisdiction Over Claims Against the Arizona AG.

Claims of at least some of the Plaintiff's members are barred by the *Rooker-Feldman* doctrine.  The *Rooker-Feldman* doctrine further prevents the Court from taking jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005); *see also Guttman v. Khalsa,* 446 F.3d 1027, 1031 (10th Cir.2006).   The prior trustees of the UEP Trust were named as defendants in the UEP Trust Case.  [*See* Exhibit "G" hereto (original petition in UEP

1   Trust Case).  They were served and failed to respond, and were, accordingly removed as
2   trustees.  Moreover, the state court entered its final order confirming the reformation of
3   the UEP Trust in October, 2006.  [Exhibit "1" to Arizona AG TRO Response].     That
4   final order was not timely appealed.

5   　　　Given the Plaintiff's averments that the UEP Trust is intimately tied to and
6   dependent on management by FLDS adherents, the former trustees who failed to respond
7   in the UEP Trust Case were undoubtedly all FLDS members, and, therefore, may be
8   members of the Plaintiff association.    At least with respect to those members of the
9   Plaintiff, the claims here represent an attempt to collaterally appeal to the federal courts a
10  pre-existing final judgment of the state court.   *Rooker-Feldman* would bar that review.

11  　　　Moreover, the record in the UEP Trust Case confirms the extensive notice
12  members of the Colorado City and Hildale communities received of Defendant Wisan's
13  appointment, the proposed reformation of the UEP Trust, and the reformation of the
14  Trust.  [*See, e.g.,* Exhibit "7" to Arizona AG's TRO Response, at 3-4].    Again, no
15  members of the community opposed the reformation, and no members attempted to
16  appeal the reformation.  The policies against collateral federal appeals of final state court
17  rulings underlying *Rooker-Feldman* could undermine the claims of other members of the
18  Plaintiff association, as well.     This is one more reason that allowing the action to
19  proceed with a single, unincorporated associational plaintiff is unwarranted.

20  .     .     .
21  .     .     .
22  .     .     .
23  .     .     .
24  .     .     .
25  .     .     .
26  .     .     .
27  .     .     .
28

352980                                    24

1    **V.      Conclusion.**

2           For the reasons stated above, the Court should dismiss all claims against the

3    Arizona AG with prejudice, and award the Arizona AG all relief appropriate to the

4    dismissal.[8]

5           Filed this 8th day of December, 2008.

6                                                TERRY GODDARD
7                                                Attorney General

8                                                s/William A. Richards
9                                                _____
                                                 William A. Richards
10                                               Assistant Attorney General
                                                 1275 W. Washington
11                                               Phoenix, Arizona  85007

12

13   I certify that I electronically
     transmitted the attached document
14   to the Clerk's Office using the
     CM/ECF System for filing and
15   transmittal of a Notice of Electronic
     Filing to the following, if CM/ECF
16   registrants, and mailed a copy of
     same to any non-registrants, this
17   8th day of December, 2008 to:
18
19
     James C. Bradshaw
20   Brown, Bradshaw & Moffat
     10 West Broadway, Suite 210
21   Salt Lake City, UT  84101
     jim@brownbradshaw.com
22

23

24   _____

25   [8]  The Arizona AG does not intend by limiting this motion to the issues raised herein to
     waive any other affirmative defenses, including without limitation the bar of any
26   applicable statute of limitations or laches period, which the Arizona AG reserves and
     which he shall assert in any responsive pleading he may file should the Court deny this
27   motion.
28
     352980                                   25

Kenneth A. Okazaki
Ryan M. Harris
Stephen C. Clark
Frederick M. Gedicks
Jones Waldo Holbrook & McDonough SLC
170 S. Main Street, Suite 1500
Salt Lake City, UT  84101
kokazaki@joneswaldo.com
rharris@joneswaldo.com
sclark@joneswaldo.com
gedicksf@lawgate.buy.edu

Richard A. Van Wagoner
Rodney R. Parker
Snow Christensen & Martineau
10 Exchange Place, 11th Floor
PO Box 45000
Salt Lake City, UT  84145-5000
rvanwagoner@scmlaw.com
rparker@scmlaw.com
*Attorneys for Plaintiff*

Jerrold S. Jensen
Assistant Attorney General
Utah Attorney General
160 East 300 South
P.O. Box 140857
Salt Lake City, UT  84114-0857
jerroldjensen@utah.gov
*Attorney for Defendant Mark Shurtleff*

352980

Jeffrey L. Shields
Michael D. Stanger
Zachary T. Shields
Callister, Nebeker & McCullough
Gateway Tower East, Suite 900
10 East South Temple
Salt Lake City, Utah  84133
jlshields@cnmlaw.com
mstanger@cnmlaw.com
zachshields@cnmlaw.com
*Attorney for Defendant Bruce Wisan*

 Judge Denise Posse Lindberg
Third Judicial District Court
458 S. State
PO Box 1860
Salt Lake City, UT  84114-1860


s/Charlotte L. Haught_____

352980