CALLISTER NEBEKER & McCULLOUGH
JEFFREY L. SHIELDS (2947)
MARK L. CALLISTER (6709)
ZACHARY T. SHIELDS (6031)
MICHAEL D. STANGER (10406)
Zions Bank Building Suite 900
10 East South Temple
Salt Lake City, UT 84133
Telephone: (801) 530-7300
Facsimile: (801) 364-9127
jlshields@cnmlaw.com
mcallister@cnmlaw.com
zachshields@cnmlaw.com

Attorneys for Defendant Bruce R. Wisan, Court-appointed
Special Fiduciary of the United Effort Plan Trust

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE FUNDAMENTALIST CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, an Association of Individuals,<br><br>Plaintiff,<br><br>vs.<br><br>BRUCE R. WISAN, Special Fiduciary of the United Effort Plan Trust; MARK SHURT-LEFF, Attorney General for the State of Utah; TERRY GODDARD, Attorney General for the State of Arizona; and DENISE POSSE LINDBERG, Judge of the Third Judicial District Court of Salt Lake County, State of Utah,<br><br>Defendants. | **AFFIDAVIT OF WINSTON BLACKMORE**<br><br>Case No. 2:08-CV-772-DB<br><br>Judge Dee Benson |

550526-1

1

STATE OF UTAH         )
                      )ss
COUNTY OF SALT LAKE   )

I, WINSTON K. BLACKMORE, declare under criminal penalty of the State of Utah that the following is true and correct:

1. I am over the age of 21, am competent to testify, and have personal knowledge of the facts set forth herein.

2. In February of 1986, I became a Trustee of the UEP Trust (the "Trust" or the "UEP"), and served in that capacity until mid-2002. I also served, from August of 1984 until May of 2002, as the bishop of Canada for the group which is now known as the FLDS Church. Even today, I continue to perform the duties of a bishop for hundreds of Fundamentalists who live on real property owned by the Trust and administered by the Special Fiduciary.

3. In 1991 President Rulon Jeffs, who was then the prophet of the Priesthood Work, gave me a commission to assist him in his duties. This required many private meetings and conversations with him. I learned through these private meeting and conversations much about the financial history of the Priesthood Work and the Trust. Rulon Jeffs was an original settler of the Trust and had been involved in its management since the beginning. Because of my service as a Trustee of the Trust and my prior leadership role in the Priesthood Work, I am very familiar with the operations of the Trust, the Priesthood Work, and the FLDS Church up to mid 2002.

4. I am no longer affiliated with the FLDS Church, having been disfellowshipped in mid 2002 by Warren Jeffs after the death of his father, Rulon Jeffs.

550526-1

2

5. Even after my disfellowshipment I consider myself and those Fundamentalists for whom I perform the duties of a bishop to be beneficiaries of the Trust. After reformation of the Trust my congregation and I are all Trust Participants as defined in the Reformed Trust.

6. I have read the AFFIDAVIT OF WILLIE JESSOP IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION dated November 2, 2008 ("Willie Jessop Affidavit") and the FIRST AMENDED COMPLAINT AND REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF dated November 5, 2008. Many of the statements in the Willie Jessop Affidavit are not true, are not complete, and are not based on the personal knowledge of Willie Jessop.

7. Willie Jessop has never served as a trustee or officer for the Trust. During the time that I was a trustee of the Trust, and during the time I served as Bishop until my excommunication, Willie Jessop never held any office or position of authority in the Priesthood Work or the FLDS Church. I do not know whether Willie Jessop has held any office or position of authority in the FLDS Church after my excommunication.

8. The Trust and the FLDS Church have always been separate entities. The Trust has existed since 1942, while the members of my faith did not begin referring to themselves as the FLDS Church until the late 1990s.

9. The Trust has always been managed and administered by the Trustees of the Trust and not by the FLDS Church or persons who held only FLDS Priesthood office such as Bishop. Many Trustees have also held offices in the Priesthood Work and the FLDS Church, but authority to manage the Trust was always vested in the Trustees of the Trust.

550526-1

10. The 1998 Restatement of the Trust was not intended to: (a) unify or merge the Trust and the FLDS Church; (b) make the Trust and the FLDS Church synonymous or co-extensive; or (c) eliminate the secular purposes of the Trust.

11. The assertion and inference that the settlors of the Trust or the Trustees at the time of the 1998 Restatement would have wanted Judge Lindberg to terminate the Trust and place Trust property in the hands of the Corporation of the President of the Fundamentalist Church of Jesus Christ of Latterday Saints (at a time when the Trust and the Corporation of the President was itself in default in tort lawsuits and controlled by Warren Jeffs, who had made the decision to default in such lawsuits in the first place) is false. Such a result would benefit only the group who is now attempting to usurp control over the Trust. One of the primary purposes of the Trust is to render the beneficiaries secure in the occupancy of their homes. Turning over ownership and control of homes to the Corporation of the President at that time would have run completely counter to this purpose of the Trust.

12. While the Trust and the real property it owns have served as one means to assist members of my faith in living the United Order, the Trust has always had broader secular purposes. Indeed, it is wrong to say that the United Order can only be lived through the Trust and the real property it owns. Such a view is dismissive of the very real consecrations of time, talents, etc. made by those living the United Order, regardless of whether they live on Trust property or elsewhere. In fact, Rulon Jeffs founded the FLDS Church. Rulon Jeffs lived and preached the United Order, yet he never resided on UEP property until the last few years of his life when he sold his personal residence in Salt Lake County, Utah, and moved to Hildale, Utah.

13. The claim that the determination of Trust beneficiaries "just wants and needs" is exclusively an FLDS religious determination is false. The 1942 Declaration of Trust uses that very phrase and pre-dates the organization of the FLDS Church by approximately 40 years.

14. Specifically, the third full paragraph of Article XII (page 2) of the 1942 Declaration of Trust states in part as follows:

> ". . . the said trustees may make a division of the trust fund or property as may by them deemed advisable to individual members of the trust, or all of them, strictly in accordance with their *just wants and needs*; and provided, further, that the trustees may render needed assistance to *non-members of the trust* when deemed wise by them." (Emphasis added.)

15. There exists significant secular objective criteria on which such a decision can be based, particularly when with respect to housing. For example, it does not require a religious determination to decide that an individual beneficiary who built a home on Trust land and provided the labor and materials to do so should in most circumstances be allowed to continue to reside in that home. I am completely comfortable with the Special Fiduciary making such determinations in a religiously neutral manner, as he has proved to be more than fair in doing so in Canada.

16. It is also wrong to say that the phrase "just wants and needs" can only be determined by religious leaders. The Trustees of the Trust have used that same standard for distributing Trust benefits to members and non-members of the Trust both before and after the 1998 Restatement.

17. The Special Fiduciary can determine "just wants and needs" for the purpose of distribution of Trust benefits without being an FLDS Church authority or any other religious authority.

5

550526-1

18. As one example of secular use of Trust land, the Trust long allowed for non-believers to live on Trust land. In 1985, our president LeRoy Johnson announced that the Trust would not seek to evict from Trust-owned homes former members of the Priesthood Work. This became important to my family personally in March of 1985 when my mother contemplated transferring certain land to the Trust. She wanted assurances from Trustee President Johnson and Trustee Rulon Jeffs that family members who were not considered members of the Priesthood Work but wished to receive a lot and build a home on Trust property would be granted a lot to build on if they so desired. Both President Johnson and Rulon Jeffs agreed, and it gave my mother comfort enough to continue with the transfer. My home is on that property.

19. As another example of secular use of Trust land, the Trust owns and has historically allowed persons who are not FLDS members to use cemetaries and many parks, playgrounds and recreation areas on Trust land, including a rodeo grounds, and a golf course.

20. As another example of secular use of Trust land, in 1985 when the Trust opened the CMC grocery store which is located on UEP land, some Trust beneficiaries and city officials suggested that use of the store should be restricted to only believers. Trustee LeRoy Johnson made it very clear that the store would be available to everyone – believers and non-believers, members of the UEP and non-members of the UEP.

21. The Trust and its property are not required for me and my congregation to live the law of consecration. The Special Fiduciary who was appointed by the Court to administer the Trust has not interfered in any way with my efforts to live my faith or exercise my duties as a bishop. He has never attempted to usurp my role as a bishop, and I am not aware of any action undertaken by him which could be viewed as an attempt to place himself in the role of a bishop

over the FLDS. At the same time, the Special Fiduciary has not been antagonistic towards my efforts to live my faith or worship according to the dictates of my own conscience.

22.   The members of the FLDS church here in Canada have been denied nothing by the Special Fiduciary. Their homes have been defended against those who have sued the Trust, they meet in their meeting house on Trust claimed land, send their children to schools on Trust claimed ground, and have access to the Trust's cemetaries, rodeo grounds, recreation areas, water systems, and infrastructure.

23.   This does not mean they have all been friendly to the Special Fiduciary or welcomed his appointment. I am aware that the FLDS refer to the Special Fiduciary as the "State Ordained Bishop" or "SOB."

24.   I understand that the Special Fiduciary desires to sell the land in Mohave County, Arizona known as the Berry Knoll Farm to help pay Trust debts, and that the FLDS are resisting such efforts with two arguments: (a) that the Berry Knoll is a sacred FLDS temple site; and (b) that the Berry Knoll Farm serves as the "breadbasket of the community" and a source of agricultural benefit to the FLDS Bishop's storehouse. Both claims are not true.

25.   The Berry Knoll Farm has never been the breadbasket of the community, despite significant effort and investment to make it a viable agricultural plot of ground. Despite the fact that significant machinery, labor, etc. was donated, the Berry Knoll farm was never viable to provide food for the community or for the community's cattle. On October 25, 1997, in a meeting of the majority of the Trustees of the Trust, President Rulon Jeffs informed us that he was no longer going to subsidize the Berry Knoll Farm.

26. The Trustees engaged in several conversations with the idea of turning the Berry Knoll Farm land into building lots and converting the agricultural water rights into domestic water use. That would still be a productive use of the land.

27. With respect to the claim that the Berry Knoll is the site of a future FLDS temple, the prophecy on which that claim is based was allegedly made by a priesthood leader, Joseph W. Musser, who died in 1954, and since 1980 whose teachings have been rejected by the FLDS Church. Never during my time as a Trustee of the Trust was there any discussion of building a temple on Berry Knoll.

28. During the years I was Trustee and the UEP was involved in extensive litigation, the legal costs to the Trust often exceeded $1,000,000.00 annually.

29. I have relied on the Reformed Trust and the process under which it was reformed. To stay the Reformed Trust or attempt to un-reform the Reformed Trust would cause a great hardship to me and the Trust Participants who reside in Canada and who are not FLDS members.

30. As a former Trustee, and a member of a large number of ex-FLDS members who are beneficiaries, I respectfully request that the Special Fiduciary be allowed to

continue in his court-appointed duties, to defend the Trust against tort plaintiffs, and to manage the Trust in a religiously neutral manner, as he has done to date.

DATED: November 6, 2010

_____
WINSTON K. BLACKMORE

Subscribed, sworn to and acknowledged before me by Winston Blackmore, whose identity is known to me or proven to me on the basis of satisfactory evidence, this 6th day November, 2010.

Notary Public
NANCY JO POTTER
Commission #581697
My Commission Expires
February 24, 2014
State of Utah

_____
NOTARY PUBLIC

CERTIFICATE OF SERVICE

I hereby certify that the foregoing **AFFIDAVIT OF WINSTON BLACKMORE** was served via the Court's CM/ECF electronic filing system, on November 9, 2010. A copy of the Court's Electronic Mail Notice List is attached.

/s/ Jeffrey L. Shields

550526-1

# Mailing Information for a Case 2:08-cv-00772-DB

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **James C. Bradshaw**
  jim@brownbradshaw.com,carol@brownbradshaw.com,michelle@brownbradshaw.com

- **Stephen C. Clark**
  sclark@joneswaldo.com,msorenson@joneswaldo.com,aarmstrong@joneswaldo.com

- **Frederick M. Gedicks**
  gedicksf@lawgate.byu.edu,intakeclerk@scmlaw.com

- **Ryan M. Harris**
  rharris@joneswaldo.com,khess@joneswaldo.com

- **Randy S. Hunter**
  randyhunter@utah.gov

- **Jerrold S. Jensen**
  jerroldjensen@utah.gov,scornell@utah.gov

- **Kenneth A. Okazaki**
  kokazaki@joneswaldo.com

- **Rodney R. Parker**
  rparker@scmlaw.com,intakeclerk@scmlaw.com

- **William A. Richards**
  bill.richards@azag.gov,connie.lopez@azag.gov,charlotte.haught@azag.gov

- **Bridget K. Romano**
  bromano@utah.gov,peggywheeler@utah.gov,federalcourt@utah.gov

- **Jeffrey L. Shields**
  jlshields@cnmlaw.com,njpotter@cnmlaw.com

- **Zachary T. Shields**
  zachshields@cnmlaw.com,alambert@cnmlaw.com

- **Michael D. Stanger**
  mstanger@cnmlaw.com,kspencer@cnmlaw.com

- **Peggy E. Stone**
  pstone@utah.gov,federalcourt@utah.gov,shaunallen@utah.gov

- **Richard A. Van Wagoner**
  rvanwagoner@scmlaw.com,intakeclerk@scmlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore

require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

**Comma delimited list of email addresses that may be used for copying and pasting into your own email program:**

jim@brownbradshaw.com,carol@brownbradshaw.com,michelle@brownbradshaw.com,sclark@joneswaldo.com, msorenson@joneswaldo.com,aarmstrong@joneswaldo.com,gedicksf@lawgate.byu.edu,intakeclerk@scmlaw.com, rharris@joneswaldo.com,khess@joneswaldo.com,randyhunter@utah.gov,jerroldjensen@utah.gov, scornell@utah.gov,kokazaki@joneswaldo.com,rparker@scmlaw.com,bill.richards@azag.gov, connie.lopez@azag.gov,charlotte.haught@azag.gov,bromano@utah.gov,peggywheeler@utah.gov, federalcourt@utah.gov,jlshields@cnmlaw.com,njpotter@cnmlaw.com,zachshields@cnmlaw.com, alambert@cnmlaw.com,mstanger@cnmlaw.com,kspencer@cnmlaw.com,pstone@utah.gov, shaunallen@utah.gov,rvanwagoner@scmlaw.com

(Too many email addresses to create a "mailto" link - more than 256 characters.)